UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>14-20250-CR-MORENO</u>

**UNITED STATES OF AMERICA**

**vs.**

**LAMAR COCHISE MURPHY,**

    **Defendant.**

_____ /

<u>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS</u>

The United States of America, through the undersigned Assistant United States Attorney, files this response in opposition to Lamar Cochise Murphy's Motion to Suppress Statements and Physical Evidence (DE:28). For all of the reasons listed below, the Defendant's motion should be granted in part and denied in part.

<u>FACTUAL BACKGROUND</u>

A.  <u>Investigative Background</u>

On or about July 29, 2013, Detectives from the Miami-Dade Police Department ("MDPD") received information that drugs were being sold and firearms were being possessed at an address located 1117 NW 3rd Avenue, Apartment # 12, Miami, Florida.[1] As a result, MDPD Detectives conducted surveillance in the vicinity of the above-mentioned address.

---

[1] The apartment building at this location is a three level apartment building. The staircase and doors to certain apartments are visible from the street level.

At approximately 5:00 p.m., MDPD Detectives observed an individual later identified as Keith Tyrone Joseph ("Joseph") conduct what appeared to be three separate hand to hand drug transactions on the second floor of 1117 NW 3rd Avenue.  All of the sales were conducted in the same routine fashion.  Three separate buyers approached Joseph on the second floor of 1117 NW 3rd Avenue and handed him United States currency.  Joseph walked away from the buyers into a small hallway.  Seconds later, he returned and handed the buyers a small object.  The buyers went to their vehicles and left the location.

Immediately after each of the buyers left the location, MDPD Detectives stopped each of the buyer's vehicles to retrieve the contraband.  In all of the car stops, the Detectives observed or recovered controlled substances.  For example, the first buyer was an individual with the initials "F.P."  MDPD Detectives recovered one clear bag of crack cocaine from his wallet.  F.P. was arrested for possession of cocaine.[2]

The second buyer stopped was an individual with the initials "D.W."  MDPD Detectives stopped her car and ordered out of the vehicle.  D.W. failed to comply and placed one clear bag of powder cocaine in her mouth.  Detectives instructed her to spit out the bag, but she swallowed it.  D.W. was arrested for tampering with or fabricating physical evidence.[3]

The last vehicle stopped belonged to an individual with the initials "B.P."  MDPD Detectives immediately stopped B.P.'s vehicle and recovered 12 clear bags of crack cocaine.  B.P. was arrested for two counts of purchase or possession with intent to purchase cocaine.[4]

After Joseph conducted the three drug sales, MDPD Detectives noticed that after each sale he would walk to apartment # 12, which was located on the third floor.  According to MDPD Detectives, Joseph knocked on the door and a male later identified as Lamar Cochise

---

[2] F.P. was sentenced to a diversion program.
[3] D.W. pleaded guilty to tampering with evidence.  Adjudication was withheld and she was sentenced to probation.
[4] B.P. was sentenced to a diversion program.

Murphy ("Defendant") opened the door. Joseph handed the Defendant what appeared to be United States currency and then proceeded back to the second floor to make more drug sales.

During the surveillance of Joseph, MDPD Detectives observed an individual later identified as Demetrius Allen McDuffie ("McDuffie") arrive at the location in a Black Dodge Charger. McDuffie exited the vehicle with several bags of groceries and called Joseph for help. Joseph met McDuffie at the vehicle and helped take the groceries to apartment # 12.

After Joseph went back to the second floor, MDPD Detectives approached the location and placed him under arrest. MDPD Detectives recovered approximately five (5) clear baggies of crack cocaine, twenty-three (23) yellow baggies of heroin, seventeen (17) purple baggies of powder cocaine, and one (1) clear orange baggie of powder cocaine from a fire extinguisher box that was located on a wall near Joseph.

MDPD Detectives proceeded to the third floor for the purposes of conducting a "knock and talk" and encountered an individual with the initials "J.T.C." leaving apartment # 12. As J.T.C was leaving the apartment, MDPD Detectives were able to look inside the living room of the apartment. In addition to a strong odor of marijuana emanating from the apartment, MDPD Detectives observed the following: (i) one assault rifle leaning against the wall next to the television; (ii) one clear ziploc bag that contained suspected narcotics on the television console; and (iii) an unknown amount of United States currency on the television.

In addition, MDPD Detectives observed the Defendant sitting on the living room couch in close proximity to the semi-automatic rifle and McDuffie standing in the kitchen placing items in the refrigerator. Both of the individuals were looking at the Detectives.

Detective Terrence White ("Det. White") told both occupants to exit the apartment. McDuffie started to walk towards the door, but stopped within distance of the semi-automatic

rifle. For safety purposes, Det. White and Detective Charles Woods ("Det. Woods") entered the apartment and detained the Defendant and McDuffie.

MDPD Detectives conducted a protective sweep throughout the apartment to confirm that no other occupants were inside. Once it was confirmed that the apartment was safe, Det. White asked the Defendant and McDuffie if he could search the house. Both of the individuals stated that they did not live there. Based upon their answers, Det. White secured the location and applied for a State authorized search warrant.

Det. White appeared before the Honorable Judge William Thomas ("Judge Thomas") of the Circuit Court for the Eleventh Circuit. In his search warrant affidavit, Det. White informed the court about: (i) Joseph's hand to hand transactions on the second floor of the above-mentioned premises; (ii) the semi-automatic rifle that he observed inside the apartment; and (iii) the suspected narcotics and United States currency inside the apartment. All of the items described in the search warrant application were observed by the Detectives when J.T.C exited the apartment. Det. White did not include in the application any information the officers gained during the protective sweep of the apartment. Based upon the information provided in the search warrant affidavit, Judge Thomas found that there was probable cause to search the residence and the search warrant was authorized. ("Attachment A")

      **B.**     <u>**Execution of the Search Warrant**</u>

On or about July 30, 2013 at approximately 12:03 a.m., MDPD Detectives executed the search warrant on the above-mentioned premises. Upon entering the living room, MDPD Detectives recovered one clear sandwich bag that contained 275 yellow baggies of suspected heroin, two clear bags of suspected heroin, and $158 in United States currency from the television console. MDPD Detectives also recovered one Hellpup 7.62x39 black and brown

semi-automatic assault rifle leaning against the living room wall. Inside of the rifle was a black magazine loaded with twenty (20) 7.62 x 39 bullets.

A search of the northeast bedroom revealed the following: (i) one Department of Corrections Identification card in the name of Defendant; and (ii) two pay stubs from JMI Staffing, Inc. in the name of Defendant. These items were found in a shoebox next to the bed. MDPD Detectives also observed male clothing in the closets of the northeast bedroom.

A search of the southeast bedroom revealed the following: (i) one Florida Identification card in the name of McDuffie; (ii) one Florida Vehicle Registration card in the name of McDuffie; (iii) several prison photos of McDuffie; and (iv) one New Balance shoe box that contained two crack/cocaine "cookie" sheets and approximately $448 United States currency. MDPD Detectives also recovered one pair of green shorts from the southeast bedroom. Inside the pockets of the shorts, MDPD Detectives recovered one clear bag of powder cocaine and one clear bag of suspected heroin.

Thereafter, MDPD Detectives searched the kitchen and recovered one Timberland shoe box from the top of the kitchen cabinet that contained: (i) two-hundred and eight (208) orange baggies of powder cocaine; (ii) fifty (50) yellow baggies of heroin; (iii) thirty-seven (37) clear baggies of crack/cocaine; and (iv) approximately $409 United States currency. Detectives also recovered one stolen Glock 19 .9mm handgun with an extended magazine (Serial # RTD817) from the living room window seal A/C Unit next to the front door.

### C.  Statement of the Defendant

After the search of the apartment was completed, the Defendant was transported to the MDPD. Upon his arrival, the Defendant was read his rights pursuant to Miranda v. Arizona. The Defendant invoked his Fifth Amendment right to remain silent and did not give a statement.

While completing the arrest processing paperwork, including documents recovered from the apartment, Det. White told the Defendant he was a liar because he found the Defendant's personal effects in the bedroom. According to the Detective, he told the Defendant he was a liar because the Defendant originally told Det. White that he did not live at the apartment.

In response, the Defendant stated that he had been living in that apartment with his cousin (McDuffie) for a few months because he had nowhere to go. Defendant also advised Det. White that the drugs belonged to someone else.

## PROCEDURAL BACKGROUND

On April 22, 2014, a Southern District of Florida grand jury returned an indictment that charged the Defendant with one count of conspiracy to possess with intent to distribute a controlled substance, in violation of Title 18, United States Code, Section 846; one count of possession with intent to distribute a controlled substance, in violation of Title 18, United States Code, Section 841(a)(1); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and one count of possession of a firearm by a convicted felon, in violation of Title 21, United States Code, Section 922(g)(1). On May 5, 2014, the Defendant appeared before the Honorable United States Magistrate Judge Alicia M. Otazo-Reyes to be arraigned (DE:11). The Defendant pleaded not guilty and requested a trial by jury (DE:11). On June 4, 2014, the Defendant filed the instant motion (DE:28).

## ARGUMENT

**I.   THE DEFENDANT HAS NOT DEMONSTRATED THAT HE HAD A LEGITIMATE EXPECTATION OF PRIVACY IN THE SEARCHED APARTMENT.**

The Fourth Amendment's prohibition against unreasonable searches and seizures "protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion," and "only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." United States v. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000). In United States v. Harris, the court held that a defendant seeking to suppress evidence bears the burden of establishing a reasonable expectation of privacy in the area searched. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008). If the defendant seeking to suppress evidence can demonstrate an expectation of privacy, the burden then shifts to the government to prove that the search was reasonable based upon a recognized exception to the warrant requirement. Id. See United States v. Bachner, 706 F.2d 1121, 1125–26 (11th Cir. 1983).

A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable. Id. See United States v. Segura–Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006). "A legitimate expectation of privacy [must] be proven by factors beyond mere possession, such as a right to exclude or a right to privacy." Id. United States v. Espinosa–Orlando, 704 F.2d 507 (11th Cir. 1983) (citing Rakas v. Illinois, 439 U.S. 128 (1978)).

In the matter at hand, the Defendant filed a conclusory motion requesting this Court to suppress the physical evidence and statements. As the court held in Harris, the Defendant must demonstrate that he had a reasonable expectation of privacy in the searched apartment. The Defendant has failed to meet his burden. In fact, the Defendant has not even attempted to assert any facts in his motion that show that he had a subjective expectation of privacy. Therefore, the motion should be denied and an evidentiary hearing is unwarranted.

## II.     THE PHYSICAL EVIDENCE RECOVERED FROM THE APARTMENT SHOULD NOT BE SUPPRESSED.

The Defendant argues that the MDPD's warrantless entry into the apartment was unlawful (DE28:2).  Specifically, the Defendant maintains that: (1) the officers intentionally entered the apartment without a warrant, and (2) the "warrant affidavit was based in large part on a recitation of the officer's observations upon gaining unjustified entry into the apartment" (DE28:2-3).  Therefore, according to the Defendant, any physical evidence obtained during the unlawful search and all fruits derived therefrom should be suppressed (DE28:5).  The Defendant is wrong.

### A.     The Officer's Warrantless Entry into the Apartment was Lawful.

The Fourth Amendment provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Kentucky v. King, 131 S.Ct. 1849, 1856 (2011).  The "text of the Amendment thus expressly imposes two requirements." Id.  The search and seizure must (i) be reasonable, and (ii) a warrant may not be issued unless it is supported by probable cause. Id. See Payton v. New York, 445 U.S. 573, 584 (1981).

Pursuant to well established law under the Fourth Amendment, the Supreme Court has stated that "search and seizures inside a home without a warrant are presumptively unreasonable." Id.  However, there are certain circumstances when that presumption can be overcome pursuant to certain established exceptions to the warrant requirement. Id.

The exigent circumstances exception encompasses situations such as hot pursuit, risk or removal or destruction of evidence, and danger to the arresting officers or the public." United States v. Hall. 500 Fed.Appx. 819820 (11th Cir. 2012) (citing United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986)).  For the exigent circumstances exception to apply, "the exigencies of the situation [must] make the need of law enforcement so compelling that [a]

8

warrantless search is objectively reasonable under the Fourth Amendment." Id. (citing King, 131 S. Ct. at 1586).

In narcotics cases, the exigent circumstances exception is "particularly compelling . . . because narcotics can be so easily and quickly destroyed." United States v. Reid, 69 F.3d 1109, 1113 (11th Cir. 1995). For law enforcement to conduct a warrantless search, however, they must have (1) probable cause and (2) exigent circumstances. Id. (citing United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991)). Probable cause exists when under the "totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Exigent circumstances exist when there are facts that would "lead a reasonable agent to believe that evidence might be destroyed or removed before a warrant could be secured. Reid at 113. United States v. Rodgers, 924 F.2d 219, 222 (11th Cir. 1991). Police may not manufacture such exigencies, but they do not do so provided that they "do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." Hall, 500 Fed.Appx at 821 (citing King, 131 S.Ct. 1862).

### a.  **Probable Cause**

In the instant matter, MDPD Detectives observed Joseph conduct three separate hand to hand transactions on the second floor of 1117 NW 3rd Avenue. After each hand to hand transaction was completed, two things happened. First, Joseph took the proceeds from the drug transaction to apartment # 12. A male later identified as the Defendant opened the door and retrieved the currency from Joseph.

Second, each of the buyers entered their vehicles and drove away from the location. Immediately thereafter, MDPD Detectives individually stopped each of the buyer's vehicles. On

9

all three occasions, MDPD Detectives either recovered or observed the buyers with controlled substances.

As a result, MDPD Detectives approached the location and stopped Joseph on the second floor. After detaining Joseph, the Detectives were able to recover a variety of drugs from the fire extinguisher box located near Joseph. Based upon those facts, MDPD Detectives already had probable cause to believe evidence of narcotics trafficking would be found in the apartment, including the cash from the transactions observed by the detectives as well as drugs.

However, after Joseph was placed under arrest, the MDPD Detectives approached apartment # 12 to conduct a "knock and talk." See Kentucky v. King, 131 S. Ct. at 1860 (holding that the police may conduct a "knock and talk" even though they already have probable cause for a search warrant). See also United States v. Moreno, 701 F.3d 64, 73 (2nd Cir. 2012) (holding that it is not a violation of the Fourth Amendment for officers to knock on a door as any private citizen might. If those on the other side of the door react in ways that result in exigencies to which police must respond, occupants "have only themselves to blame for the warrantless exigent circumstance search that may occur.")

According to the Detectives, when they arrived at the apartment, J.T.C. was leaving and the door was completely opened. While standing at the front door, the Detectives observed the Defendant sitting on the couch in the living room and McDuffie standing in the kitchen putting groceries away. They also observed a semi-automatic rifle leaning against the living room wall and suspected narcotics on the television console near the rifle. This additional information served to further establish probable cause to search the apartment.

### b. Exigent Circumstances

Once Det. White observed the rifle and narcotics, he ordered both individuals to come outside the apartment. The Defendant and McDuffie did not comply with his commands. Therefore, the Detectives entered the apartment, detained the Defendant and McDuffie and conducted a protective sweep throughout the apartment.

In United States v. Timmann, the court held that "[a] protective sweep may also be undertaken without an arrest warrant, so long as the officers are lawfully within the premises due to, for example, the existence of exigent circumstances." Timmann, 741 F.3d 1170 (11th Cir. 2013). See United States v. Caraballo, 595 F.3d 1214, 1224-25 (11th Cir.2010). To conduct a protective sweep, the Detectives must "possess a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing danger to those on the arrest scene." Id. (citing Maryland v. Buie, 494 U.S. 325, 327 (1990)).

Here, the Detectives observed the semi-automatic rifle and drugs in the living room. Also, there were two people, the Defendant and McDuffie, visible in the apartment. However, the Detectives had no idea if others were in the apartment. As a result, they quickly conducted a protective sweep through the apartment to make sure there were no additional occupants in the residence that could cause harm to the Detectives or destruction of evidence. The Detectives did not search the residence and did not seize any property. In fact, the Detectives did not seize the firearm and contraband they observed while standing at the front door of apartment # 12. Instead, they removed the occupants and secured the location so that Det. White could get a search warrant. Therefore, the exigent circumstance justified the entry into the apartment, the detention of the Defendant, and securing the premises until Det. White could get a search warrant.

**B.     The Authorized Search Warrant was Supported by Probable Cause.**

Even if the Court concludes that the protective sweep did not comply with the Fourth Amendment, the subsequent search pursuant to the State court issued warrant was still valid. Probable cause to search a residence exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir.2009) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a "safe yet accessible place." Id. "The affidavit should [also] establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir.2002).

Here, the search warrant affidavit clearly established a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. Initially, the MDPD Detectives received information that drugs were being sold and guns were possessed in apartment # 12. On July 29, 2013, the MDPD Detectives went to the location to attempt to corroborate the information that was given to them. Once they arrived at the location, MDPD Detectives observed drugs being sold from the second floor of 1117 NW 3rd Avenue.

The Detectives also observed Joseph take the proceeds from those drug sales to apartment # 12 which was located on the third floor. When MDPD Detectives arrived at the front door of apartment # 12 they observed a firearm and controlled substances. The Defendant and McDuffie were ordered to come out of the apartment and failed to do so. When the Defendant and McDuffie failed to comply, the Detectives entered the apartment and detained

them.  The Detectives conducted a protective sweep of the location; however, they never searched the residence or seized any evidence.

Instead, Det. White appeared before the Honorable Judge Thomas seeking authorization for a search warrant.  In his affidavit, Det. White explained that: (i) drugs were being sold at 1117 NW 3rd Avenue; (ii) the seller, Joseph, was taking the profits from those proceeds to apartment # 12; (iii) he observed a semi-automatic rifle leaning against the living room wall; and (iv) he observed controlled substances on the television console which was in close proximity of the rifle.  The affidavit did not mention any of the additional contraband or controlled substances that were found after the search warrant was signed or anything the Detective might have seen while conducting the protective sweep. See generally, United States v. Murray, 487 U.S. 533 (1988) (holding that issuance of a search warrant was proper where police did not include observations from warrantless search in the warrant affidavit).  Clearly, the probable cause described in the search warrant application was the product of lawful surveillance and observations while at the front door of apartment # 12.  Therefore, the search warrant affidavit was supported by probable cause and it was not tainted by evidence recovered after the search or during the protective sweep.

In the Defendant's Motion to Suppress, he cited United States v. McGough, 412 F.3d 1232 (2005), to support his argument that the search warrant was supported by illegally seized evidence.  In McGough, the defendant was arrested for reckless conduct for locking his five-year old daughter, Queenice, inside their apartment. Id at 1233.  The Defendant was handcuffed and arrested outside his apartment. Id. The Atlanta Police Department ("APD") officers sat the defendant in the police vehicle and, subsequently, asked defendant for consent to search the apartment. Id at 1234. He told them no. Id.  While waiting for Queenice's Aunt to arrive, APD

noticed Queenice did not have shoes. Id.  APD entered the apartment with Queenice to grab shoes and observed a bag of marijuana and a firearm. Id.  After they observed the marijuana and the firearm, the APD officer's applied for a search warrant.  This Circuit held that the APD officers unlawfully entered the defendant's apartment and there was no exigent circumstance or any other exception that "necessitated" the warrantless entry. Id. at 1239.

In addition, the court held that the exclusionary rule was applicable. Id. The court reasoned that it was not an "objectively reasonable law enforcement activity" but rather the officer's unlawful entry into [the] apartment that led to [the officer's] request for a search warrant." Id.  In that instance, the search warrant "was tainted with evidence obtained as a result of a prior, warrantless, presumptively unlawful entry into the apartment." Id. (citing United States v. Meixner, 128 F.Supp.2d 1070, 1078 (E.D.Mich.2001).

The short answer is that McGough has nothing to do with this case.  In this case, it was an objectively reasonable law enforcement activity that led the Detectives to request a search warrant.  The Detectives in this case observed drugs being sold in front of the location.  They also arrested Joseph who had in his possession several bags of heroin, crack cocaine, and powder cocaine.  The Detectives also observed Joseph taking money from the drug sales to the Defendant in apartment #12.  When they approached the apartment to conduct a "knock and talk", J.T.C was exiting and the Detectives were able to observe a firearm and controlled substances at the front door. Therefore, the MDPD Detectives purpose for entering apartment #12 was legitimate.

    C.    **Good Faith Exception**

"The exclusionary rule does not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but

ultimately found to be unsupported by probable cause." United States v. Leon, 468 U.S 897 (1984). "[W]hen law enforcement obtains a search warrant in good faith and acts within its scope "there is no police illegality and thus nothing to deter." Id. The good faith exception to the exclusionary rule does not apply when: (i) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard for the truth; (ii) the magistrate wholly abandoned his detached and neutral judicial role; (iii) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (iv) the warrant was so facially deficient by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid. United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002). When trying to determine whether the good faith exceptions should apply, the test is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Taxacher, 902 F.2d 861, 871 (11th Cir. 1990).

Presently, there is no evidence that suggests that the good faith exception is inapplicable. First, the MDPD Detectives observed Joseph selling drugs to people and taking the money to the defendant who was inside apartment #12. When the Detectives arrived at the location, they observed a firearm and additional contraband. Thus, the magistrate was not misled by false information. Second, there is no evidence that suggests that magistrate judge abandoned his neutral judicial role. Third, the search warrant clearly showed that drugs and a firearm were possessed inside apartment # 12. Last, the search warrant particularly described the places to be searched and the evidence to be seized. Therefore, a reasonable officer in the agent's position would have believed in good faith that the warrant for apartment #12 was valid.

### III. THE DEFENDANT'S STATEMENTS ARE INADMISSIBLE.

The Defendant contends that his statements should be suppressed (DE28:3-4). According to the Defendant, the government must demonstrate that any statements made were obtained in compliance of the Fifth Amendment and Miranda (DE28:4). In particular, the defendant argues that the government must show that he knowingly, intelligently, and voluntarily waived his Miranda rights before being questioned (DE28:4).

The government concedes that the statements made by the defendant were made in response to statements that were functionally equivalent to interrogation. The government does not intend on using those statements in its case in chief. However, the government may use the statements if the Defendant himself testifies at trial. Harris v. New York, 401 U.S. 222 (1971) (holding statements made in violation of Miranda may be used to impeach a defendant who testifies at trial).

## **CONCLUSION**

For all of the reasons articulated above, this Court should deny the Defendant's Motion to Suppress Physical Evidence and grant the Defendant's Motion to Suppress Statements.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:   */s/Maurice A. Johnson*
Maurice A. Johnson
Assistant United States Attorney
District Court No. A5501806
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9454
Fax: (305) 530-7976
Maurice.Johnson@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on June 23, 2014.

                                          /s/*Maurice A. Johnson*
                                          Maurice A. Johnson
                                          Assistant United States Attorney